UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

PRIORITY FULFILLMENT SERVICES, INC.,

                         Plaintiff,

-v-

GAIAM AMERICAS INC., FIT FOR LIFE, LLC, and
FFL.COM LLC,

                         Defendants.

GAIAM AMERICAS INC., FIT FOR LIFE, LLC, and
FFL.COM LLC,

                         Third-Party Plaintiffs,

-v-

PFSWEB, INC.,

                         Third-Party Defendant.

------------------------------------------------------------X

17 Civ. 5504 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to dismiss counterclaims. Plaintiff Priority Fulfillment Services, Inc. ("PFS"), a provider of logistics and fulfillment services, has sued its former customer, Gaiam Americas Inc. ("Gaiam"), a manufacturer, wholesaler, and retailer of stress-relief- and yoga-related products, and Gaiam's successor and assignee, Fit for Life LLC ("Fit for Life" and together with Gaiam and FFL.com, "Gaiam"). PFS sues Gaiam for non-payment of amounts it owes PFS for services provided under the parties' agreement.

1

Gaiam has countersued, bringing claims against PFS and its parent company, PFSWeb (together with PFS, the "PFS Parties"), now a third-party defendant in this action. Gaiam alleges that the PFS Parties misrepresented their capabilities during the negotiations that led to the parties' agreement. On that basis, Gaiam brings common-law and statutory misrepresentation claims under Colorado law. Gaiam also alleges that PFS breached the agreement through a series of errors in fulfilling Gaiam's customers' orders and shipping Gaiam's products.

PFS now moves to dismiss Gaiam's counterclaims. For the reasons that follow, the Court dismisses Gaiam's Counts 1 and 2, with leave to Gaiam to amend, and dismisses Counts 3 and 4 with prejudice.

I. **Background**

    A. **Facts**[1]

---

[1] The Court's recitation of the facts is drawn from the Counterclaim and Third-Party Complaint (the "CC"). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts in the Counterclaim to be true and draws all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Court also considered the documents attached to the Declaration of Ralph Blakley. Dkt. 24. Because these documents were incorporated into the Counterclaim by reference they are properly considered on a motion to dismiss. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (in resolving a motion to dismiss, the court may consider, *inter alia*, "any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit") (citation omitted). The Court considered these documents "not for the truth of the matters asserted therein," but only "for the fact that the statements were made." *Clark v. Kitt*, No. 12 Civ. 8061(CS), 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014); *see also, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.") (emphasis omitted).

At all relevant times, Gaiam was a manufacturer, wholesaler, and direct-to-consumer retailer of yoga-related, stress-relief-related, fitness, and other products. CC ¶ 4. Gaiam sold its products under its own brand name and under the SPRI brand. *Id.*

In 2014, Gaiam began a search for a third-party logistics provider to handle its direct-to-consumer e-commerce operations. *Id.* ¶ 6. PFSWeb was one of three such providers with which Gaiam had initial negotiations. *Id.* ¶ 9. During those negotiations, PFSWeb and PFS made representations about PFS's ability to perform the tasks required. *Id.* ¶¶ 10–15.

On February 18, 2015, Gaiam and PFS entered into a Transaction Management Services Agreement (the "TMSA"). *Id.* ¶ 31. In July 2015, PFS began providing the third-party logistics services to Gaiam. *Id.* ¶ 41. Once PFS began, "[s]ome of PFS's failures were apparent almost immediately." *Id.* ¶ 42. These included failures in properly measuring and cataloguing products PFS received from Gaiam, *id.* ¶¶ 46–51, in timely processing products, *id.* ¶ 52, and in packing goods in the appropriate boxes, *id.* ¶¶ 60–63.

Throughout late 2015 and early 2016, representatives of Gaiam raised these issues with PFS representatives. *See id.* ¶ 66. PFS assured Gaiam that it would rectify the storage, fulfillment, and shipping issues Gaiam had identified. *Id.* ¶¶ 66–67. But PFS did not do so. *Id.* ¶ 66.

On January 10, 2017, FFL.com, as assignee of Gaiam's agreement with PFS, notified PFS of PFS's material breaches and of its intent to terminate the TMSA. *Id.* ¶ 78.[2] After PFS

---

[2] The Counterclaim does not allege how Fit For Life came to be assignee of Gaiam's rights under the TMSA. In its complaint, PFS alleges that, on or about May 10, 2016, Gaiam sold its assets, and assigned the TMSA, to Fit For Life. *See* Compl. ¶¶ 12–14. Gaiam's answer denies those allegations. *See* Dkt. 17 ¶¶ 12–14. To resolve PFS's motion to dismiss, it is not necessary for the Court to resolve this ambiguity.

3

failed to cure the breaches FFL.com had identified within 30 days of the notice, the TMSA was terminated. *Id.* ¶ 79.

On March 2, 2017, PFS wrote FFL seeking $532,940 in fees for unpaid invoices. *Id.* ¶ 80. In a March 20, 2017 letter, FFL disputed that charge. *Id.* ¶ 82.

**B.     Procedural History**

On July 19, 2017, PFS initiated this action by filing a complaint against Gaiam, FFL, and FFL.com. Dkt. 1. On September 20, 2017, defendants filed an answer, which included the counterclaims and third-party claims at issue here. Dkt. 17 (the "CC").

On October 13, 2017, the PFS Parties moved to dismiss the Counterclaim, Dkt. 22, and filed a brief, Dkt. 23 (Pl. Br.) and the declaration of Ralph Blakely in support, Dkt. 24.

On October 23, 2017, at an initial pretrial conference, the Court stayed discovery in this case pending resolution of the PFS Parties' motion. *See* Dkt. 33.

On December 1, 2017, Gaiam filed its brief in opposition, Dkt. 40 ("Def. Br."), and the declaration of Joseph Maleh in support, Dkt. 41.

On December 19, 2017, the PFS Parties filed a reply. Dkt. 42.

**II.    Legal Standard on a Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), a complaint (including one bringing counterclaims) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferenmuce that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlements to relief." *Twombly*, 550 U.S. at

558. Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

### III. Analysis

#### A. Counts One & Two

Counts One and Two are each based on the claim that the PFS Parties misrepresented PFS's ability to implement a direct-to-consumer e-commerce system. Count One alleges the tort of negligent misrepresentation under Colorado common law; Count Two alleges a violation of the Colorado Consumer Protection Act.[3]

The PFS Parties make various arguments for dismissal of these claims—that (1) the TMSA's disclaimers and integration clause bar these claims in their entirety; (2) the claims are brought outside the TMSA's one-year limitations period; (3) the TMSA's limitation of liability provision bars the claims; (4) the claims do not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b); and (5) as to Count Two only, that it fails to allege a public harm, as required by Colorado law. The Court addresses these arguments in turn.

##### 1. Integration Clause

The TMSA includes three provisions—sections 9.4, 9.5, and 15.1—which, the PFS Parties argue, together disclaim Gaiam's reliance on the representations on which Gaiam's claims rest. Gaiam counters that those disclaimer provisions are ambiguous—and thus cannot provide a basis for dismissal on the pleadings—and, in any event, are unenforceable under Colorado law.

---

[3] Colorado law governs this dispute. The TMSA specified that the agreement was governed by the laws of the state of Gaiam's principal place of business, which was Colorado. *See* TMSA § 15.2; CC ¶ 7. PFS does not contend otherwise. *See* Pl. Br. at 8.

5

The disclaimer and integration provisions are found in three sections of the TMSA.

Section 9.4 provides:

> Except as expressly set forth herein or in a SOW, PFS disclaims any representation or warranty that: (i) the Services and Deliverables will meet Customer's business requirements; (ii) the Services and Deliverables will be error-free or uninterrupted or that the results obtained from its use will be accurate or reliable; or (iii) all deficiencies in the Services or Deliverables can be found or corrected. PFS is not responsible for: (a) any failure or defect in the Services or Deliverables caused by acts within the control of Customer or interoperability of specific Customer applications or equipment with the Services or Deliverables not included in the Specifications; (b) loss of data that is not due to a breach of this Agreement by PFS; (c) the inability of Customer to access or interact with any other service provider through the Internet, other networks or users that comprise the Internet or the informational or computing resources available through the internet; or (d) services provided to Customer by other service providers, including the eCommerce Platform Provider. PFS makes no representation or warranty regarding any Third Party Services or Third Party Providers or any other Person's products or services, whether or not such products or services are designated as "certified," "validated" or otherwise.

TMSA § 9.4.

Section 9.5 provides:

> EXCEPT FOR THE EXPRESS WARRANTIES IN THIS AGREEMENT AND ANY SOW, (A) EACH PARTY HEREBY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE UNDER THIS AGREEMENT, AND (8) PFS SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NONINFRINGEMENT.

TMSA § 9.5.

Finally, Section 15.1 provides:

> **Complete Agreement.** This Agreement, including each SOW and SOW Amendment, if any, constitute the sole and entire agreement between the Parties regarding the subject matter hereof and supersedes all prior understandings, agreements, and documentation relating to such subject matter.

TMSA § 15.1.[4]

---

[4] This section is labeled "14.1" in the TMSA, but is the first subsection under Section 15 and is referred to by the parties as 15.1. *See* Def. Br. at 11 n.3.

Under Colorado law, "a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentations." *Keller v. A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69, 72 (Colo. 1991). Although "[i]ntegration clauses generally permit contracting parties to limit future contractual disputes to issues relating to the reciprocal obligations expressly set forth in the executed document," *id.*, under Colorado law, "claims of negligent misrepresentation are based not on principles of contractual obligation but on principles of duty and reasonable conduct," *id.* at 73. Therefore, "[t]he parol evidence rule does not bar the admission of evidence to establish tort claims not specifically prohibited by the terms of an agreement," including claims for negligent or fraudulent misrepresentation.

The Court therefore need not resolve whether these provisions, read singly or together with other TMSA terms, are ambiguous. In either event, under Colorado law, the provisions do not bar Gaiam's claims for negligent misrepresentation or for violation of the Colorado Consumer Protection Act.

### 2. The TMSA's One-Year and Damages-Limitation Provisions

The PFS Parties next argue that the TMSA's one-year limitations provision and damages-limitation provision bar Gaiam's misrepresentation claims. Section 11.3 of the TMSA provides:

> **11.3 Limitation of Action.** To the maximum extent permitted by applicable law and except for actions for non-payment or breach of either Party's Intellectual Property Rights, no action (regardless of form) arising out of this Agreement may be commenced by either Party more than one (1) year after the cause of action has accrued.

TMSA §11.3. In addition, in Section 11.1, "LIMITATION OF LIABILITY." the parties agreed that neither party would be liable "for any indirect, consequential, incidental, exemplary, special, or punitive damages, whether arising in tort, contract, or otherwise." *Id.* § 11.1.

7

The one-year limitation provision bars Gaiam's misrepresentation claims, the PFS Parties argue, because those claims accrued (to the extent they exist at all) well before September 19, 2016—that is one year before Gaiam filed its Counterclaim. *See* Pl. Br. at 12.

Gaiam does not dispute that its claims accrued well before September 19, 2016. It contends, however, that Section 11.3 does not apply to its misrepresentation claims because those claims do not "aris[e] out of" the TMSA.

On this point, the Court agrees with Gaiam. Its misrepresentation claims do not "arise" out of the TMSA, but are logically and temporally antecedent to that agreement. The Colorado Supreme Court's reasoning in *Keller* is again instructive. As that Court explained, "a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentations." *Keller*, 819 P.2d at 72. Such is the case here: the PFS Parties' alleged misrepresentations form a basis for a tort claim "*independent*" of the TMSA.

For much the same reason, the TMSA's damages-limitation provision does not apply to Gaiam's misrepresentation claims. As the PFS Parties recognize, that provision, like the one-year limitation, applies only to actions arising out of the TMSA. *See* Pl. Reply Br. at 4.

### 3. Rule 9(b)

The Court agrees with the PFS Parties, however, that Rule 9(b) applies to Counts One and Two, and that these claims are pled with insufficient specificity to satisfy the Rule.

As to the applicability of the Rule, in this Circuit, Rule 9(b) "'may or may not' apply to a negligent misrepresentation claim." *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 705 (S.D.N.Y. 2012) (quoting *Eternity Global Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)). Because the rule is "cast in terms of the conduct alleged,"

8

*Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004), rather than the styling of the claim, courts in this Circuit "have concluded that the Rule is applicable to negligent misrepresentation claims that are premised on fraudulent conduct," *Woori*, 910 F. Supp. 2d at 705; *see also Riker v. Premier Capital, LLC*, No. 15-CV-8293, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016) ("Whether or not Rule 9(b)'s heightened standard applies to *all* claims of negligent misrepresentation, it does apply here, as the claim sounds in fraud."). "But it is not correct to say that because negligent misrepresentation *may* sound in fraud that a negligent misrepresentation claim is *ipso facto* subject to Rule 9(b)'s heightened pleading standard: fraud is not a necessary element of a negligent misrepresentation claim. If ordinary negligence is alleged and those claims pled separately from the fraud claims, there is no compelling reason to trigger Rule 9(b)." *Woori*, 910 F. Supp. 2d at 705.

Here, the conduct underlying Gaiam's Count One, for negligent misrepresentation, indeed sounds in fraud. It alleges that PFS "had no present intention" to adapt its business in the ways necessary to live up to its contractual representations. CC ¶ 92. It further alleges that PFS's misconduct was "intentional" behavior. *Id.* ¶ 98. The CC's allegations that the PFS Parties were experts in their field, *see id.* ¶ 18, further signal that PFS's representations as to its capabilities, as alleged, were fraudulent, not merely accidentally errant. And Gaiam has not distinguished the alleged conduct underlying its claim for negligent misrepresentation (Count 1), from that underlying its claim for fraud, under the Colorado Consumer Protection Act (Count 2). The claims instead are based on common conduct. *See Woori*, 910 F. Supp. 2d at 705 ("Woori incorporates each allegation of the Complaint in its claim for negligent misrepresentation."); CC ¶ 85 (same).

Gaiam's misrepresentation claims do not, however, satisfy Rule 9(b)'s heightened pleading requirements. That Rule "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global*, 375 F.3d at 187. The Counterclaim fails to identify who made the alleged misrepresentations and where or when those misrepresentations took place. And most glaringly, the Counterclaim fails to distinguish between misrepresentations made by PFS and PFSWeb.

Accordingly, the Court dismisses Counts 1 and 2. In light of the potential for Gaiam's pleading deficiency to be corrected, the Court will afford Gaiam an opportunity to replead these claims to conform with Rule 9(b). Notably, Gaiam has not yet amended its counterclaims and has explicitly sought leave to replead. Def. Br. at 21 n.9; *see Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend." (internal quotation omitted)).

### 4. Public Harm

Independently, the PFS Parties argue that Count 2, a statutory claim under the Colorado Consumer Practices Act, must be dismissed because it does not adequately allege a public harm. As Gaiam concedes, Colorado law requires a plaintiff to allege that a defendant's wrongdoing "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). Under Colorado law, to determine whether a practice "significantly impacts the public," a courts is to consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers

affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* at 149.

Here, although Gaiam's brief argues that PFS's practices might have harmed the public, *see* Def. Br. at 24, the Counterclaim's allegations as to this point, which are determinative, are threadbare, *see, e.g.*, CC ¶¶ 51, 63, or conclusory, *id.* ¶¶ 64, 102. Accordingly, Count 2 must be dismissed for failure adequately to allege a public harm. As to this pleading deficiency, too, the Court grants Gaiam leave to replead to fortify, if possible consistent with the facts, its allegations of public harm.

### B. Counts 3 & 4

In Counts 3 and 4, Gaiam alleges that PFS breached several obligations under the TMSA and that it separately violated the implied covenant of good faith and fair dealing. The PFS Parties argue that these claims must be dismissed because of the TMSA's limitation of liability provision and that they must, at the least, be limited by the TMSA's one-year limitation period. Those arguments have merit.

#### 1. Limitation of Liability

As noted, in Section 11.1 of the TMSA, the parties agreed that neither would be liable "for any indirect, consequential, incidental, exemplary, special, or punitive damages, whether arising in tort, contract, or otherwise." The PFS Parties argue that the TMSA instead limited Gaiam's recourse, in the event of a breach of the agreement, to withholding payment of PFS's invoices pursuant to Section 5.4 of the TMSA. *See* Pl. Br. at 15. And, they argue, where Gaiam paid an invoice, the TMSA bars it from now seeking any damages.

Read in conjunction, Sections 11.1 and 5.4 indeed bar Gaiam's contract claims here. Gaiam's contract claims seek two types of damages. First, they seek the difference between

11

what Gaiam paid and what it believes it received in services from PFS. Second, they seek compensation for the harms caused by PFS's allegedly inadequate services.

To the extent Gaiam claims it has paid for services it did not receive, Section 5.4 bars those claims. Section 5.4 provides that, in the event Gaiam disputed a PFS invoice, it was to describe, within 30 days and in a written statement to PFS, the specific nature of its dispute, while paying any undisputed portion of the invoice. *See* TMSA § 5.4. If Gaiam did not give notice within 30 days that it disputed an invoice, that provision provided, Gaiam was "deemed to have irrevocably accepted such invoice" and had "no further right to dispute any amount set forth therein." *Id.* That provision bars Gaiam's pursuit, in its Counterclaim, of the difference between what it paid and what it believes the services it received were worth.

Gaiam counters that Section 5.4 cannot be read as an exclusive remedy provision. *See* Def. Br. at 19–20. But that argument misreads Section 5.4. By mandating a procedure for disputing PFS's invoices, Section 5.4 effectively restricted the means by which Gaiam could seek recompense in the event it believed PFS had over-billed for its services. That contractual arrangement implements the long-standing common-law doctrine of voluntary payment. *See, e.g., Davis v. City & Cty. of Denver*, 207 P.2d 1185, 1187 (Colo. 1949).

To the extent Gaiam seeks damages beyond the direct damages it suffered as a result of PFS's alleged breaches—for example, by "increase[ing] customer dissatisfaction," CC ¶ 64—those damages, too, are barred: by Section 11.1. There, the parties expressly waived any claims to "indirect, consequential, incidental, exemplary, special, or punitive damages, whether arising in tort, contract, or otherwise." To the extent that Gaiam's contract claims seek damages beyond alleged over-charging by PFS, those damages are indirect and/or consequential. That is because

those damages arise from the harms that PFS's alleged non-performance caused Gaiam beyond the additional costs imposed by PFS. Section 11.1 bars those claims.

### 2. One-Year Limitation

In light of the above, the Court need not consider whether Gaiam's contract claims are separately limited by the TMSA's one-year limitations provision.

## CONCLUSION

For the foregoing reasons, the Court (1) dismisses Counts 3 and 4 of Gaiam's Counterclaims, with prejudice; and (2) dismisses Counts 1 and 2, without prejudice to Gaiam's right to replead those claims to cure the deficiencies identified herein.

The stay of discovery imposed by the Court's October 23, 2017 Order, Dkt. 33, is hereby lifted. Within one week of this decision, the parties are directed to submit a case management plan to govern discovery consistent with the Court's individual rules. That plan should also set out a deadline of no more than four weeks from the day of this decision for the filing of an amended Counterclaim and Third-Party Complaint.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: June 11, 2018
New York, New York