UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRIORITY FULFILLMENT SERVICES, INC.,

               Plaintiff,

        - against -

GAIAM AMERICAS, INC., FIT FOR LIFE,
LLC and FFL.COM LLC,

             Defendants.

--------------------------------------------------------

GAIAM AMERICAS, INC., FIT FOR LIFE,
LLC and FFL.COM, LLC,

          Third-Party Plaintiff,

        - against -

PFSWEB, INC.,

          Third-Party Defendant.

Civil Action No.: 17-cv-5504-PAE-GWG

---

**PLAINTIFF PRIORITY FULFILLMENT SERVICES, INC.'S AND THIRD-PARTY
DEFENDANT PFSWEB, INC.'S BRIEF IN SUPPORT OF THEIR MOTION TO
DISMISS DEFENDANTS' FIRST AMENDED COUNTERCLAIM AND
THIRD-PARTY COMPLAINT WITH PREJUDICE**

---

 

**CHIESA SHAHINIAN &
GIANTOMASI PC**
One Boland Drive
West Orange, NJ  07052
973.325.1500
*Attorneys for Plaintiff Priority Fulfillment
Services, Inc., and Third-Party Defendant
PFSweb, Inc.*

On the Brief:
  A. Ross Pearlson
  David M. Dugan

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 4

      A.     The TMSA and Its Assignment ........................................................... 4

      B.     Defendants' Allegations of Wrongdoing ............................................. 4

ARGUMENT ...................................................................................................................... 5

I.      THE COURT SHOULD DISMISS DEFENDANTS' NEGLIGENT
      MISREPRESENTATION CLAIM WITH PREJUDICE .................................... 5

      A.     Fit for Life's and FFL.com's Counterclaims Against PFS
               Should Be Dismissed Because They Do Not Allege That
               PFS or PFSweb Made Any Pre-Contractual
               Misrepresentations to Them ................................................................. 6

      B.     Defendants' Negligent Misrepresentation Claim Should Be
               Dismissed Because Defendants Fail to Comply with
               Fed. R. Civ. P. 9(b) ............................................................................. 7

               1.     Defendants Still Fail to Distinguish Between PFS
                         and PFSweb's Alleged Negligent
                         Misrepresentations and Admit They Cannot Do So ................................ 9

               2.     The Alleged Misrepresentations Were Puffery or
                         Expressions of Opinion and Not Shown to Be False
                         When Made ...................................................................................... 12

               3.     Defendants' Allegations Explaining Why the
                         Alleged Misrepresentations Were Negligently or
                         Fraudulently Made Are Improperly Pled Upon
                         Information and Belief ........................................................................ 16

      C.     Defendants Do Not Allege Any Causal Link Between the
                Negligent Misrepresentations and PFS's Alleged Failures
                to Perform Under the TMSA ............................................................... 19

II.     THE COURT SHOULD DISMISS DEFENDANTS' CCPA CLAIM ........................... 20

        A.      Defendants Have Not Satisfied Rule 9(b) or Adequately
                Pled Causation ...................................................................................................... 20

        B.      Defendants Still Fail to Allege a Significant Public Harm ................................... 21

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Group, LLC,
Civ. Act. No. 12-cv-02167, 2013 WL 5729932 (D. Colo. Oct. 18, 2013) ........................ 12-14

Adams v. FedEx Ground Package Sys., Inc.,
546 Fed. Appx. 772 (10th Cir. 2013).................................................................................22

Allen v. SteeleEyeglasses,
252 P.3d 476 (Colo. 2011)..............................................................................................5, 6, 14

Ashcroft v. Iqbal,
556 U.S. 662 (2009)........................................................................................................5

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)........................................................................................................12

BRW, Inc. v. Dufficy & Sons, Inc.,
99 P.3d 66 (Colo. 2004)..................................................................................................7

Devaney v. Chester,
709 F. Supp. 1255 (S.D.N.Y. 1989)................................................................................8

DiVittorio v. Equidyne Extractive Indus.,
822 F.2d 1242 (2d Cir. 1987)........................................................................................9, 16

Donna v. Countrywide Mortgage,
Civil Action No. 14-cv-03515-CBS, 2015 WL 9456325
(D. Colo. Dec. 28, 2015).................................................................................................20, 22

Eternity Global Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.,
375 F.3d 168 (2d Cir. 2004)...........................................................................................8, 16

Hansen v. Auto-Owners Ins. Co.,
Civ. Act. No. 09–cv–02736–CMA–BNB, 2010 WL 749820
(D. Colo. Mar. 4. 2010)..................................................................................................8

Jacobs v. OCWEN Loan Servicing, LLC,
Civ. Act. No. 13–cv–02518–REB–BNB, 2015 WL 1433233
(D. Colo. Mar. 26, 2015)................................................................................................21

Leece v. Griffin,
371 P.2d 264 (Colo. 1962).............................................................................................12, 14

N.Y. Soc'y for the Relief of the Ruptured & Crippled, No. 07 Civ. 292(PKC),
    2014 WL 3905742 (S.D.N.Y. Aug. 7, 2014) ............................................................9

Paonia Care Center Corp. v. Quality Life Management, LLC,
    No. 03 CV 3030, 2007 WL 2463852
    (Colo. Dist. Ct., Denver Co. June 20, 2007).........................................................15

Payne v. McDonald's Corp.,
    957 F. Supp. 749 (D. Md. 1997) ............................................................................14

RHC, LLC v. Quizno's Franchising, LLC, No. 04CV985,
    2005 WL 1799536 (Colo. Dist. Ct., Denver Co. July 19, 2005) ...........................15

Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,
    62 P.3d 142 (Colo Sup. Ct. 2003)..........................................................................21

Riker v. Premier Capital, LLC,
    Civ. Act. No. 15-CV-8293, 2016 WL 5334980 (S.D.N.Y. Sept. 2016) ..................8

U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,
    472 F.3d 702 (10th Cir. 2006) .................................................................................8

Spin Master Ltd. v. Bureau Veritas Consumer Prods. Servs., Inc.,
    No. 08-cv-923, 2011 WL 1549456 (W.D.N.Y. Mar. 11, 2011) .............................13

Tara Woods Ltd. P'ship v. Fannie Mae,
    731 F. Supp. 2d 1103 (D. Colo. 2010)....................................................................21

Two Moms and a Toy, LLC v. International Playthings, LLC,
    898 F. Supp. 2d 1213 (D. Colo. 2012)....................................................................20

Van Leeuwan v. Nuzzi,
    810 F. Supp. 1120 (D. Colo. 1993).....................................................................12, 14

Woodhams v. Allstate Fire and Cas. Co.,
    748 F. Supp. 2d 211 (S.D.N.Y. 2010).......................................................................9

Yates v. Portofino Real Estate Props. Co., LLC,
    Civ. No. 08–cv–00324–PAB–MJW, 2009 WL 2588833
    (D. Colo. Aug. 17, 2009) .........................................................................................9

## Statutes and Rules

Colorado Consumer Protection Act .................................................................... *passim*

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

## PRELIMINARY STATEMENT

In its June 11, 2018 Opinion and Order (the "Opinion"), this Court dismissed Defendants' Counterclaim and Third-Party Complaint in its entirety: the Court dismissed with prejudice Defendants' claims for breach of contract and breach of the implied covenant of good faith and fair dealing based on the clear terms of the Transaction Management Services Agreement (the "TMSA"), and dismissed without prejudice Defendants' claims for negligent misrepresentation and for violation of the Colorado Consumer Protection Act ("CCPA") due to their failure to comply with Fed. R. Civ. P. 9(b). Undeterred, Defendants again try to plead around the express terms of the TMSA they signed with Plaintiff Priority Fulfillment Services, Inc. ("PFS") through the manufacture of tort and statutory claims that have no place in this simple contract dispute over Defendants' failure to pay for PFS's services. Those claims – the only two claims the Court allowed Defendants to replead – fare no better this time around and should be dismissed with prejudice due to their incurable deficiencies.

This case arises out of Defendants' failure to pay PFS's invoices for the implementation, order management, warehousing and fulfillment services PFS rendered pursuant to the TMSA. Almost two years into the contract, Defendants decided to simply stop paying PFS for its services and now owe PFS $847,040 in unpaid invoices and early termination fees. In their original CC/TPC, Defendants claimed, after receiving the benefit of PFS's services for over two years, and failing to challenge any of PFS's invoices in the manner proscribed by the contract, that Gaiam Americas, Inc. ("Gaiam") was induced into entering into the TMSA through negligent or fraudulent misrepresentations made by PFS and, even more incredibly, PFSweb, Inc. ("PFSweb), which was not even a party to the TMSA. Defendants also alleged that PFS had breached the TMSA through deficient performance.

The negligent misrepresentation claim in Defendants' Amended CC/TPC remains deficient because the Amended CC/TPC still fails to comply with Rule 9(b) in numerous ways. First, defendants Fit for Life, LLC ("Fit for Life") and FFL.com LLC ("FFL.com") have no claims because they do not allege that PFS or PFSweb made *any* pre-contractual misrepresentations to them at all.  In fact, Fit for Life and FFL.com admit they were not the original parties to the TMSA but that Gaiam assigned the TMSA to them *approximately fifteen months <u>after</u> the TMSA was executed, pre-contractual negotiations had concluded and the relationship had taken effect*.  To the extent Defendants purport to rely on any alleged misrepresentations made *post*-execution of the TMSA, such claims are barred under Colorado's economic loss doctrine.

Second, Defendants now *admit* they are unable to cure what this Court noted was the most glaring deficiency in their original CC/TPC – their inability to articulate which actionable representations were allegedly made by PFS versus PFSweb (a holding company with no employees).  Defendants' admission is conclusive evidence that their claims are nothing more than a vain attempt to avoid the clear terms of the TMSA – which the Court applied to dismiss their contract-based claims – and to plead around the terms of that contract, including the jury waiver, on the basis that PFSweb was not a party.

Third, Defendants cannot show that the few specific alleged misrepresentations that are identified in the Amended CC/TPC were anything other than mere puffery or general statements of opinion as to PFS's capabilities, which are not actionable.  Defendants rely solely on PFS's alleged general statements concerning its capabilities and expertise in its industry, as well as price *projections* on which Defendants admitted they did not rely.  None of the alleged misrepresentations in the CC/TPC are actionable statements of presently existing fact.

2

Fourth, Defendants' pleading of the central allegations of negligent and/or fraudulent intent based only "upon information and belief" does not comply with Rule 9(b). Defendants are already facing an uphill battle in attempting to transform PFS's alleged performance deficiencies over the course of the contract into a tort claim. To plead such a tort claim, they must allege that, *at the time the alleged misrepresentations were made,* PFS and/or PFSweb knew or should have known they were false. Defendants do so only in the most conclusory manner and upon information and belief. At best, Defendants are left with the allegations that PFS (and PFSweb, confusingly) represented that they could perform the services contained in the TMSA but, according to Defendants, ultimately did a poor job. These allegations are insufficient to plead a viable negligent misrepresentation claim. If they were, then every breach of contract claim could easily be transformed into a tort claim through a claim of subsequent non-performance. Rule 9(b) is intended to prevent such a result. Moreover, Defendants have not sufficiently alleged a causal nexus between the alleged negligent misrepresentations and the actual performance deficiencies. Defendants' negligent misrepresentation claim should therefore be dismissed – this time, with prejudice because it is now obvious that Defendants have no sustainable claims.

Defendants' CCPA claim fails for the same reasons as their negligent misrepresentation claim fails, and for the additional reason that they have still failed to allege the existence of a significant public harm in this purely private dispute. The only difference between the CCPA allegations in the Amended versus the original CC/TPC is that Defendants have now cited just three examples of allegedly botched orders for yoga supplies. These new allegations cannot resuscitate Defendants' CCPA claims. As an initial matter, these allegations have no direct causal link to the subject of PFS's generic statements of competence or expertise on which Defendants' CCPA claim hinges. Moreover, these allegations, even if true, are insufficient in

substance or scope to be deemed the type of "significant public harm" that the Colorado legislature and courts intended to be covered by the CCPA.  In fact, in two such cases the customers allegedly received *extra* goods that they were not even charged for.  Defendants' CCPA claim should therefore also be dismissed with prejudice.

## STATEMENT OF FACTS

### A.    The TMSA and Its Assignment

On or about February 18, 2015, PFS and Gaiam (as "Customer") entered into the TMSA under which PFS agreed to perform various services as specified in the TMSA and the Statement of Work ("SOW") attached thereto and incorporated therein, including but not limited to fulfillment, customer and marketing services.  (TPC/CC ¶¶ 39-41).  On May 10, 2016, Gaiam entered into a transaction whereby the TMSA and SOW were assigned to Fit for Life.  (CC/TPC ¶ 4).[1]  Fit for Life then assigned the TMSA to FFL.com.  (Id. ¶ 6).

### B.    Defendants' Allegations of Wrongdoing

Defendants allege that PFS (and, incredibly, PFSweb) made misrepresentations to Gaiam to induce it to enter into the TMSA.  (Id. ¶¶ 15-37).  PFS's alleged misrepresentations to Gaiam purportedly concerned PFS's capabilities, expertise and established business practices – including PFS's ability in packaging goods, adapting to customer requirements and designing storage to ensure efficiency, productivity and accuracy; its understanding of Gaiam's business; and cost projections.  (Id.).  Defendants further allege that PFS was ultimately unable to tailor its business practices to accommodate Gaiam's business at the prices projected, namely through alleged receiving failures, storage/replenishment failures and fulfillment/shipping failures.  (Id.

---

[1]  Allegations quoted from the Amended CC/TPC are assumed true for purposes of this motion only.

¶¶ 54-72).  In short, Defendants allege that PFS misrepresented its capabilities to perform the contract.

Defendants allege that Gaiam "repeatedly informed PFS of the various problems both orally and in writing."  (Id. ¶ 74).  Despite allegedly coming to believe that PFS could not provide the services as represented as early as August 27, 2015, and citing ten communications from Gaiam to PFS that took place between August 27, 2015 and February 5, 2016, Defendants did not purportedly terminate the TMSA until January 10, 2017, eight months after Gaiam assigned them the rights under the TMSA.  (Id. ¶¶ 74, 90).

## ARGUMENT

To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, the claimant must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Defendants' Amended CC/TPC fails in its entirety for numerous reasons set forth below and should therefore be dismissed.

### I.    THE COURT SHOULD DISMISS DEFENDANTS' NEGLIGENT MISREPRESENTATION CLAIM WITH PREJUDICE

Defendants' negligent misrepresentation claim fails for a number of reasons.  "The elements of a claim of negligent misrepresentation are: (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment."  Allen v. SteeleEyeglasses,

252 P.3d 476, 483 (Colo. 2011).  Defendants cannot sustain their negligent representation claim because they cannot satisfy Rule 9(b)'s heightened pleading requirements, which this Court has already held to apply, and they have not sufficiently alleged a valid causal link between the misrepresentations and their damages.

### A.   Fit For Life's and FFL.com's Counterclaims Against PFS Should Be Dismissed Because They Do Not Allege That PFS or PFSweb Made Any Pre-Contractual Misrepresentations to Them

Fit for Life's and FFL.com's claims against PFS and PFSweb are particularly deficient because neither defendant alleges that PFS/PFSweb made a single pre-contractual misrepresentation to them, as opposed to Gaiam.  The only misrepresentations pled (albeit deficiently) were allegedly made to Gaiam – the only defendant with whom PFS/PFSweb allegedly negotiated.  Fit for Life and FFL.com admit that they were not the original parties to the TMSA who negotiated it, but were subsequently assigned the contract on May 10, 2016 – almost fifteen months after Gaiam and PFS executed the TMSA and over seventeen months after the PFS made the last alleged misrepresentation set forth in the CC/TPC.  (CC/TPC ¶¶ 4-6, 34, 39).

In addition, Defendants admit that Gaiam was aware of PFS's alleged deficient performance through citing a litany of complaints Gaiam had allegedly made to PFS almost immediately after PFS began performing services under the TMSA and before assigning the TMSA to Fit for Life.  (CC/TPC ¶¶ 74).  Fit for Life and FFL.com do not have standing to assert a negligent misrepresentation claim and could not have justifiably relied on any alleged negligent misrepresentations on the part of PFS or PFSweb made to Gaiam.  See Allen, 252 P.3d at 483.

To the extent Fit for Life and FFL.com purportedly relied upon any alleged misrepresentations PFS made to them *after* the execution of the TMSA, including PFS's alleged misrepresentations that it could fix the alleged problems Fit for Life claimed to be experiencing,

the economic loss doctrine bars any claims based upon such misrepresentations. A claim for negligent misrepresentation will not lie based on alleged misrepresentations made during the course of the performance of the contract (as opposed to pre-contractual misrepresentations) and where the duties alleged to have been breached arise from a contractual duty. See BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72, 75 (Colo. 2004) (dismissing negligent misrepresentation claim based on misrepresentations made during performance, "by which time the parties had bargained for the allocation of risks, duties, and remedies"; "The contract between PSI and BRW contained the duty to carefully and non-negligently report on the Project's status. Because Dufficy alleges that PSI breached this duty, and the duty is contained in the interrelated contracts, the economic loss rule bars the negligent misrepresentation claim").

Here, Fit for Life and FFL.com correctly allege that Section 3.2 of the TMSA set forth PFS's standard of performance, incorporating the detailed Statement of Work. After the TMSA's execution, the TMSA governed the parties' rights and obligations. Moreover, as to Defendants' central allegation that PFS's conduct resulted in them overpaying under the TMSA (i.e., their primary form of damages), this Court has already held that the TMSA provided a mechanism to dispute PFS's charges in Section 5.4 of the TMSA. (Opinion at pp. 11-12). While this Court has held that pre-contractual misrepresentations may be actionable if properly pled, alleged misrepresentations made during the course of the contract fall squarely within the confines of the economic loss doctrine. Fit for Life's and FFL.com's negligent misrepresentation claim therefore fails.

### B.   Defendants' Negligent Misrepresentation Claim Should Be Dismissed Because Defendants Fail to Comply with Fed. R. Civ. P. 9(b)

Even with their second bite at the apple, Defendants' negligent misrepresentation claim still does not comply with Rule 9(b)'s heightened requirements.

This Court has already held that Defendants' negligent misrepresentation claim is subject to Rule 9(b) because it sounds in fraud.  (Opinion at pp. 8-9).  In so holding, the Court cited Defendants' allegations that PFS "'had no present intention'" to adapt its business in the ways necessary to live up to its contractual representations, that PFS's misconduct was "intentional" behavior, that PFS was an "expert" in its field, and that the underlying alleged conduct giving rise to Defendants' negligent misrepresentation claim was identical to that giving rise to Defendants' CCPA claim.  (Id. at 9).[2]  Defendants' amended negligent misrepresentation claim contains the same allegations and is therefore still subject to Rule 9(b).  (See, e.g., CC/TPC ¶¶ 98, 99, 102, 107, 111).  Under Rule 9(b), a claimant must "(1) detail the statements (or omissions) that the [claimant] concedes are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  Eternity Global Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004).  Defendants still cannot meet that standard, warranting dismissal of their claims, now *with* prejudice.  See Devaney v. Chester, 709 F. Supp. 1255, 1265 (S.D.N.Y. 1989) ("Failure to comply with Rule 9(b) ordinarily results not in outright dismissal, but in an order directing the errant pleader to replead his fraud allegations in conformity with the

---

[2] Claims based on misrepresentations are subject to the heightened pleading standard set forth in Fed. R. Civ. P. 9(b).  See U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006) (fraudulent misrepresentation); Riker v. Premier Capital, LLC, Civ. Act. No. 15-CV-8293, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 2016) (Rule 9(b) applies to negligent misrepresentation claims sounding in fraud); Hansen v. Auto-Owners Ins. Co., Civ. Act. No. 09–cv–02736–CMA–BNB, 2010 WL 749820, at *2 (D. Colo. Mar. 4, 2010) (claims under the CCPA must be pled with particularity pursuant to Rule 9(b)); 1 Civil Practice in the Southern District of New York, § 6:10 (December 2016 update) ("While the Second Circuit has yet to decide whether a claim for negligent misrepresentation must also comply with the pleading requirement of Rule 9(b), district courts have routinely applied Rule 9(b) to these claims.").

Rule.  Where a prior opportunity to remedy Rule 9(b) pleading defects has already been afforded, however, it is within the discretion of the district court to deny leave to replead.").

### 1.     Defendants Still Fail to Distinguish Between PFS and PFSweb's Alleged Negligent Misrepresentations and Admit They Cannot Do So

This Court dismissed Defendants' claims against PFSweb because, among other reasons, Defendants failed to distinguish between misrepresentations made by PFS and PFSweb.  (ECF No. 43 at 10).  Where claims based on misrepresentations are asserted against more than one defendant, the pleading needs to not only identify the parties making each statement, but to set forth "which statements were allegedly made by whom."  Yates v. Portofino Real Estate Props. Co., LLC, Civ. No. 08–cv–00324–PAB–MJW, 2009 WL 2588833, at *3 (D. Colo. Aug. 17, 2009) (standard not met where plaintiffs consistently referred to "Defendants" or "representatives" of certain entities as having made false representations or otherwise deceiving them instead of identifying who specifically made the representation or acted fraudulently, and failed to specify how certain alleged statements were attributable to defendant-company); accord Woodhams v. Allstate Fire and Cas. Co.,748 F. Supp. 2d 211, 222 (S.D.N.Y. 2010) (reciting rule that "[f]raudulent statements or conduct must be attributed to each defendant individually; 'Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'"; allegations that certain defendants were wholly owned subsidiaries of other defendant that market and sell policies of insurance purchased by class members was insufficient).[3]

---

[3]  See also DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1249 (2d Cir. 1987) (allegation that one defendant is a "subsidiary . . . which serves as a manager and syndicator" of another defendant is insufficient to charge the subsidiary "with liability for representations" in the parent's filing); N.Y. Soc'y for the Relief of the Ruptured & Crippled, No. 07 Civ. 292(PKC), 2014 WL 3905742, at *20 (S.D.N.Y. Aug. 7, 2014) ("The Complaint's nine causes of action make blanket allegations concerning the alleged misconduct of all three defendants, and

Defendants are still determined to attempt to drag PFSweb (a holding company), into this litigation so they can avoid the terms of the TMSA, including its jury waiver provision, but now *admit* that they cannot distinguish between misrepresentations allegedly made by PFS and PFSweb – and, therefore, cannot satisfy the initial requirement of Rule 9(b) by identifying who made which alleged misrepresentations.  They allege that "[a]part from the fact that PFS is PFSweb's wholly owned subsidiary, Defendants do not know the specific relationship between PFSweb and PFS in terms of how they operate vis a vis each other.  Neither do the know, nor could they know, which of the agents they interacted with formally work for PFSweb or PFS," and that "Defendants do not, and cannot, know without discovery, who at PFSweb contributed to" the June 4, 2014 proposal on which Defendants principally rely in support of their remaining claims.  (CC/TPC ¶¶ 14, 18).  Defendants further qualify their allegations about "PFSweb's representations" as having been made "initially by persons presenting themselves as agents of PFSweb, and later, *upon information and belief*, repeated by those same agents acting for PFS and/or PFS PFSweb simultaneously."  (CC/TPC ¶ 16) (emphasis added).[4]

It is Defendants' burden to identify who made each of the alleged misrepresentations to them.  Defendants' inability to do so demonstrates that have no colorable basis to sue PFSweb, which Defendants admit is an entirely separate entity (a subsidiary) from PFS, was not a party to the contract and did not perform services under the TMSA.  (CC/TPC ¶ 13).

---

therefore fail to satisfy Rule 9(b).  They fail to distinguish between the defendants' roles in the various alleged schemes.  [Relator] therefore has not alleged fraud with particularity.").

[4] Interestingly, the allegation in Defendants' original CC/TPC was that the alleged pre-contractual misrepresentations were "made initially by PFSweb itself and later repeated by PFS." (Original CC/TPC ¶ 11).  Defendants' bad faith in contriving the claims against PFSweb is clear as they now tacitly admit that this allegation was completely unfounded and that they actually have no idea who allegedly misrepresented what "facts."

The deficiencies in Defendants' Amended CC/TPC are further underscored by Defendants' references to PFSweb and several allegations as to *PFSweb's* alleged capabilities that are facially implausible, including:

- "During Gaiam's and PFSweb's negotiations, PFSweb's representatives made various representations to Gaiam about ***its*** [PFSweb's] present capabilities, 3PL expertise and established direct-to-consumer e-commerce business practices in order to induce Gaiam to enter into the TMSA and SOW." (CC/TPC ¶ 15) (emphasis added).

  PFSweb was not (and is not alleged to be) a party to the TMSA. There is no basis for the allegation that PFSweb's alleged misrepresentations about *its own* capabilities, expertise and business practices could have induced Gaiam to enter into the TMSA/SOW with *PFS*.

- In the June 4, 2014 proposal, "PFSweb represented *itself* as an expert in 3PL and related e-commerce systems claiming *it* employed 'top experts in each function area.'" (CC/TPC ¶ 18). Paragraphs 19 through 21 further allege that PFSweb misrepresented its own capabilities.

  These allegations render implausible the claim that PFSweb could have negligently induced Gaiam into entering into the TMSA with *PFS*.

- Defendants first allege that "PFSweb's representations (made initially by persons presenting themselves as agents of PFSweb, and later, upon information and belief, repeated by those same agents acting for PFS and/or PFS and PFSweb simultaneously) in many cases spoke expressly about PFS's present ability to perform as Gaiam's direct-to-consumer e-commerce business."

  But in that same paragraph, Defendants allege that "[i]n other instances, the representations carried with them the implicit representation *PFSweb* was capable of doing what *PFSweb* said it could do." (CC/TPC ¶ 16) (emphasis added). Again, however, PFSweb was not a party to the TMSA and is not alleged to have been.

In the very rare instances where Defendants suggest PFSweb made misrepresentations about *PFS's* abilities, they fail to specify the nature of the alleged representations. (See, e.g., CC/TPC ¶ 22). This is a critical deficiency because PFS – not PFSweb – was the party to the TMSA and the entity performing the services thereunder. To assert claims against a non-party to the TMSA, Defendants should, at a minimum, allege why and how PFSweb was playing a role in

the marketing of PFS's services, how it was intimately familiar with PFS's expertise, and why and how it was involved with making forecasts and projections concerning the prices *PFS* would be charging Gaiam and how PFS/PFSweb knew or should have known that any of its statements were false when made.  They have not done so, and, as a result, continue to conflate PFS and PFS's role in making alleged misrepresentations, thus falling well short of satisfying Rule 9(b)'s heightened pleading requirements.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (holding that a claim will have "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### 2.   The Alleged Misrepresentations Were Puffery or Expressions of Opinion and Not Shown to Be False When Made

It is well-settled that neither puffery nor mere prophetic expressions of opinion, including those as to alleged capabilities or future performance, can support a claim based on misrepresentation.  See, e.g., 2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Group, LLC, 12-cv-02167, 2013 WL 5729932, at *5 (D. Colo. Oct. 18, 2013) (dismissing CCPA claims based on alleged misrepresentations that were nothing more than puffery); Van Leeuwan v. Nuzzi, 810 F. Supp. 1120, 1124 (D. Colo. 1993) ("[M]ere expressions of opinions cannot support a misrepresentation claim."); Leece v. Griffin, 371 P.2d 264, 265 (Colo. 1962) ("It is well settled in Colorado that one of the essential elements of fraud and deceit is that there be a false representation of a material fact, which fact either exists in the present or has existed in the past; and, conversely, that a mere expression of an opinion in the nature of a prophecy as to the happening or non-happening of a future event is not actionable.").  Defendants cite to only a few specific alleged misrepresentations by PFS and PFSweb, none of which are sufficient to sustain their claim.

The June 9, 2014 Email (CC/TPC ¶ 17)

It is not clear whether Defendants are attempting to rely on the alleged June 9, 2014 email from PFS to Gaiam as part of their negligent misrepresentation claim.  In any event, they may not do so.  The email contains nothing more than generalized statements of expertise, namely, that PFS delivers "repeatable, excellent customer experience with every consumer at every touch point" and "extensive experience delivering fully customized, brand-enhancing ecommerce solutions for major sporting goods brands."  (CC/TPC ¶ 17).  These statements are perfect examples of puffery or mere opinion, as is PFS's alleged statement concerning its ability to deliver "fully customized, brand-enhancing ecommerce solutions."  2-BT, LLC, 2013 WL 5729932, at *5 ("[T]he statement 'tailors coverage to properly outfit the contractor with excellent coverage' is mere puffery and. . . is not actionable under the CCPA as a matter of law."); accord Spin Master Ltd. v. Bureau Veritas Consumer Prods. Servs., Inc., No. 08-cv-923, 2011 WL 1549456, at *10 (W.D.N.Y. Mar. 11, 2011) (collecting cases for the proposition that statements of expertise are nothing more than mere opinion or puffery and are thus not actionable).  To the extent that these statements as to PFS's capabilities and expertise could be actionable, Defendants must plead that they were untrue when made.  They do not and the referenced statements therefore cannot support a negligent misrepresentation claim.

The June 4, 2014 Proposal (CC/TPC ¶¶ 18-22)

The June 4, 2014 proposal on which Defendants heavily rely is no more actionable because, again, it contains nothing other than puffery and statements of opinion as to PFS's capabilities that Defendants do not allege were untrue when made.  Defendants point only to the following alleged misrepresentations:

- That PFS employed "top experts in each functional area [including specifically, order fulfillment, order management and warehousing, who] have designed and

refined [PFS's] capability to deliver comprehensive solutions with premium capabilities and outstanding efficiency." (CC/TPC ¶ 18).

- PFSweb also claimed therein it had cultivated this expertise because it was the "oldest and largest independent end-to-end ecommerce solution provider, leading the marketplace in enterprise-level comprehensive ecommerce solutions." (CC/TPC ¶ 19).

- In the Proposal, PFSweb also made specific representations about its expertise and abilities in specific areas. For example, with respect to packaging it claimed it "employ[ed] packaging experts who stay informed of the latest trends in the packaging industry … [and that they would work] to determine the most cost effective method…" (CC/TPC ¶ 20).

- PFSweb also claimed that "[its] customer solutions adapt to [its] client's requirements rather than requiring clients to conform to [their] standard solution set" and that it "design[s] storage and primary pick areas to ensure efficiency, productivity and accuracy." (CC/TPC ¶ 21).  See 2-BT, LLC, 2013 WL 5729932, at *5.

- PFSweb allegedly made price projections to Gaiam that Gaiam alleges turned out to be too low.  But Defendants admit that these projections were based upon assumptions of Gaiam's "forward-looking revenue projections" *that Gaiam "early on informed PFSweb were inaccurate because Gaiam was in the process of changing the focus of its business.*"  (CC/TPC ¶ 33) (emphasis added). Defendants admit that they did not rely on these projections, which therefore cannot support their negligent misrepresentation claim.  Allen, 252 P.3d at 483.

The November 3 and December 12, 2014 Proposals (CC/TPC ¶¶ 34-35)

Defendants cannot rely on the November 3 and December 12, 2014 proposals to support their negligent misrepresentation claim.  First, Defendants admit that "Gaiam understood the various projections were not a guarantee that shipping and fulfillment fees would never be more than projected."  (CC/TPC ¶ 35).  This admission confirms the fact that the projections were just that – forwarding looking projections as to fees and not pricing guarantees upon which Defendants could justifiably rely.  See Van Leeuwen, 810 F. Supp. at 1124; Leece, 371 P.2d at 265; accord Payne v. McDonald's Corp., 957 F. Supp. 749, 761 (D. Md. 1997) (granting motion to dismiss franchisee's fraud claim where alleged fraud related to *projections of future costs and*

*performance* and promises with respect to impact of new restaurant on existing franchisee because such statements are promises of future events, <u>cited in</u> <u>RHC, LLC v. Quizno's Franchising, LLC</u>, No. 04CV985, 2005 WL 1799536, at *10 (Colo. Dist. Ct., Denver Co. July 19, 2005)); <u>Paonia Care Center Corp. v. Quality Life Management, LLC</u>, No. 03 CV 3030, 2007 WL 2463852 (Colo. Dist. Ct., Denver Co. June 20, 2007) (statements in pro forma provided during negotiations contained price projections which are statements of opinion thus not actionable).

Second, as set forth above, Defendants do not allege other than in a conclusory manner and upon information and belief that these projections were negligently or falsely made – much less why or how they were fraudulent.  To the contrary, the CC/TPC alleges that PFSweb took steps to learn Gaiam's business, including by sending Gaiam questionnaires concerning its business and touring Gaiam's warehouse.  (CC/TPC ¶¶ 25-27).  Moreover, Defendants allege that these representations "implied" that PFS had the ability to perform the services "at a cost level at least commensurate with its projections" and that it could "employ this expertise to develop a solution suitable to Gaiam's needs."  (CC/TPC ¶¶ 36-37).  In other words, Gaiam alleges that because PFS did not perform in the manner it represented it could, that PFS or PFSweb must have been negligent in making its representations and that a tort remedy lies.  Defendants' bare allegation that they thought the actual costs would be closer to the projections than they were is insufficient to support a negligent misrepresentation claim.

Defendants can point to no other specific communications other than those addressed above.  As such, Defendants' negligent misrepresentation claim fails.

3. **Defendants' Allegations Explaining Why the Alleged Misrepresentations Were Negligently or Fraudulently Made Are Improperly Pled Upon Information and Belief**

It is well-settled that "Rule 9(b) pleadings cannot be based upon information and belief." DiVittorio v. Equidyne Extractive Indus, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Here, Defendants' central allegations as to why PFS's and/or PFSweb's alleged misrepresentations were fraudulently made are pled *only* upon "information and belief."[5]   See Eternity Global Master Fund, Ltd., 375 F.3d at 187 (the claimant must plead why the alleged statements were fraudulent). These allegations do not satisfy Rule 9(b).

First, Defendants cannot plead the necessary elements of negligence or fraud necessary to establish an actionable misrepresentation under Rule 9(b) because they plead the following allegations only on information and belief:

- "The systematic failures made it clear to Defendants that PFSweb's representation that it could accommodate Gaiam's business at the prices stated were, *on information and belief*, negligent misrepresentations of PFSweb's (and its subsidiary's) capabilities as a 3PL." (CC/TPC ¶ 51) (emphasis added).   The allegedly negligent nature of a misrepresentation is, of course, critical to a claim of negligent misrepresentation.   If Defendants can allege *the existence of negligence* only upon information and belief, then how can they possibly plead a negligent misrepresentation claim in good faith?[6]

- "Indeed, *on information and belief*, PFSweb never could have accommodated Gaiam's business at the prices stated, and PFSweb, as a so-called expert in the field, should have known this having allegedly conducted a thorough investigation of Gaiam's business." (CC/TPC ¶ 51) (emphasis added).   Again, a well-plead allegation that PFSweb knew *at the time it made price-related projections* that the *projections* were knowingly or negligently false would be

---

[5] A recognized exception lies where the claimant alleges that the unpled facts are "peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based."   Id.   Defendants do not appear to attempt to plead within this exception.

[6] Defendants similarly allege that "many" of PFS's or PFSweb's alleged representations "*turned out to be* false and, *on information and belief*, PFSweb made these representations recklessly." (CC/TPC ¶ 16) (emphasis added).

absolutely necessary to establish a negligent misrepresentation claim (albeit insufficient for other reasons), but is pled only upon information and belief.

- "While Defendants were complaining about these problems, repeated assurances were made both verbally and in writing that PFS could and would fix the receiving, storage and fulfillment/shipping issues, but never did, and, *on information and belief*, never could because PFS's system was inherently flawed and modifications could not be made without substantial cost."  (CC/TPC ¶ 75) (emphasis added).  Aside from the fact that the alleged misrepresentations post-date the execution of the TMSA and are inactionable under the economic loss doctrine (as stated above), the negligent nature of PFS's alleged misrepresentation is, again, pled upon information and belief and is not sustainable.  Nor is the similar allegation that "[e]ventually it became clear these representations were also false. *Upon information and belief*, PFS did not have the ability to modify its procedures to reduce Gaiam's costs."  (CC/TPC ¶ 79) (emphasis added).

- "*On information and belief*, had PFSweb correctly assessed Gaiam's business processes, it would have quoted accurate pricing information to Gaiam during the negotiation of the TMSA, or represented that it could not cost-effectively accommodate Gaiam's business."  (CC/TPC ¶ 53) (emphasis added).  This allegation pertains to causation and the fact that PFSweb negligently assessed Gaiam's business processes, thus causing it to make allegedly negligent misrepresentations.  Allegations pled upon information and belief are insufficient to establish this critical element of Defendants' claim.

- The same deficiency applies to the allegation that "*[o]n information and belief*, PFSweb knew, or should have known (because PFSweb allegedly did a thorough investigation of Gaiam's business) that Gaiam's practice was to replenish product with frequent smaller shipments prior to executing the TMSA, but did not inform Gaiam of PFS's practice of creating multiple bins every time a product is replenished, or reflect the true cost of this practice in the projections it provided to Gaiam."  (CC/TPC ¶ 67) (emphasis added).

- "*On information and belief*, PFSweb's representations that it employed a tailored system based on the evaluation of top experts in the field was never true."  (CC/TPC ¶ 102) (emphasis added).

- "PFS breached its duty to Gaiam by misstating its present ability to perform Gaiam's e-commerce business and adapt its own business to make it suitable to Gaiam's needs at the prices agreed to.  *On information and belief*, PFS had no present intention to adapt its business in any meaningful way when it made statements that it could fix its failings."  (CC/TPC ¶ 107) (emphasis added).

- "*On information and belief*, PFS never could have performed what PFSweb promised Gaiam prior to executing the TMSA. Neither could it have modified its business to comply with its own representations."  (CC/TPC ¶ 108) (emphasis

added).

- "*On information and belief*, PFSweb's and PFS's various price quotes and projections were, based on faulty assumptions and reckless evaluation of Gaiam's business and at least negligent misunderstanding of its own capabilities." (CC/TPC ¶ 110) (emphasis added).

Second, Defendants have pled the necessary elements of causation and justifiable reliance only on information and belief:

- "Had PFSweb been truthful, *on information and belief*, Gaiam would not have entered into the TMSA."  (CC/TPC ¶ 53) (emphasis added).  Defendants, then, cannot even properly pled justifiable reliance or causation.

- "In total, PFS charged Defendants 63.8% more per order than it projected.  *On information and belief*, such overcharges were due entirely to PFS's failures." (CC/TPC ¶ 86) (emphasis added).  Defendants again cannot link the alleged misrepresentations to the alleged overcharges under the TMSA because they can plead only on information and belief that PFS's failures were the cause thereof.

- "*On information and belief*, PFSWeb made inaccurate projections based on a reckless evaluation of Gaiam's business and reckless (if not deliberately) inaccurate assumptions about its own business capabilities. PFS for its part reckless (if not deliberately) represented it could bring down these cost, but never did, and *upon information and belief*, never could."  (CC/TPC ¶ 87) (emphasis added).

Third, as a further defect in their ability to distinguish between PFS's and PFSweb's alleged role in making negligent misrepresentations, Defendants plead the following allegation upon information and belief:

- "*Upon information and belief*, PFSweb and its employees were acting as agents of PFS, and were clo[a]ked in apparent and/or actual authority to do so."  (CC/TPC ¶ 104) (emphasis added).  There is no support for this allegation or plausible basis for PFS's parent company to be acting as PFS's agent in the context of making limited, pre-contractual communications to Gaiam.

Because the allegations pled on information and belief do not satisfy Rule 9(b), Defendants are left only with the basic, central allegation that PFS failed to perform in the manner Gaiam expected and, as a result, any representations made prior to the TMSA's

18

execution must have been false.  This is simply not enough to sustain a negligent misrepresentation claim.

### C. Defendants Do Not Allege Any Causal Link Between the Negligent Misrepresentations and PFS's Alleged Failures to Perform Under the TMSA

Putting its Rule 9(b) deficiencies aside, Defendants' Amended CC/TPC is disjointed and a clear illustration of why courts are skeptical when parties attempt to transform contract claims into tort claims.  They rely on three alleged "failures and breaches of the TMSA": receiving, storage/replenishment and fulfillment/shipping.  (CC/TPC ¶ 52).  Other than in the most generic sense, there is no nexus between these alleged performance failures and PFS's alleged misrepresentations or negligence.

None of these three alleged performance deficiencies on the part of PFS are the subject of any of the alleged misrepresentations.  First, the alleged receiving failures, consisting of PFS's alleged systematic failure to "take proper measurements of Gaiam's products and input those measurements and other relevant information into its systems" and "in some instances" setting up entire Master Packs of a product as a "slapper," (CC/TPC ¶¶ 54-61) can, at most, be causally linked to PFS's alleged representations concerning its general expertise and ability to accommodate Gaiam's business – and not to specific, negligently made representations concerning PFS's ability to measure products and properly use slapper labels, and nothing with specific respect to Gaiam's business.  This is a simple contract dispute concerning alleged overcharges by PFS for which this Court already found Defendants had a remedy through Section 5.1 by challenging and not paying those amounts.  (Opinion at 12).

Second, the alleged storage/replenishment failures, consisting of PFS's placing Gaiam's replenished inventory "in an entirely new bin as opposed to filling up an existing bin already containing the same product" and thereby increasing storage costs is not linked to any

specifically alleged negligent misrepresentation.  Defendants do not allege that PFS or PFSweb made any specific misrepresentation that a certain storage or bin replenishment system would be used to accommodate Gaiam's business, much less a representation that PFS knew or should have known was false at the time it was made.

Third, the alleged fulfillment/shipping failures as pled suffer from the same flaws.  PFS's failure to use proper boxes for Gaiam's products and to pack them appropriately, as well as making improper split shipments (with one, isolated specific example provided) (CC/TPC ¶¶ 68-72) was also not the subject of any specific negligent misrepresentation.  At most, these statements are tied to PFS's generic, opinion-oriented statements concerning its expertise in the industry and its ability to accommodate its customers' needs – which, again, Defendants do not and cannot allege were false when made.

In the end, Defendants are unable to show anything more than PFS's alleged performance-related failures during the course of the TMSA.  These are basic contract claims and, without more, are insufficient to form the basis of a claim for negligent misrepresentation.  Defendants' claims should therefore be dismissed with prejudice.

## II.    THE COURT SHOULD DISMISS DEFENDANTS' CCPA CLAIM

### A.    Defendants Have Not Satisfied Rule 9(b) or Adequately Pled Causation

Rule 9(b)'s heightened pleading requirements apply to CCPA claims.  See, e.g., Two Moms and a Toy, LLC v. International Playthings, LLC, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012); Donna v. Countrywide Mortgage, Civil Action No. 14-cv-03515-CBS, 2015 WL 9456325, at *4 (D. Colo. Dec. 28, 2015).  Defendants purportedly rely upon the same allegations with respect to their CCPA as their negligent misrepresentation claim.  Defendants' CCPA claim therefore also fails due to an inability to comply with Rule 9(b)'s heightened pleading

requirements and/or to establish a causal link to any alleged damages.  (See § I, supra).  The Court should therefore dismiss this claim with prejudice.

### B.    Defendants Still Fail to Allege a Significant Public Harm

Defendants have failed to cure the pleading deficiencies surrounding their CCPA claim as identified in the Court's Opinion dismissing that claim – namely, their failure to allege that PFS's conduct had a significant impact on the public or potential consumers of PFS's services. Mindful of the potential to improperly transform private breach of contract claims into statutory claims, courts have held that "[a] breach of contract claim, without additional conduct, cannot constitute an actionable claim under the CCPA."  Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 148 (Colo Sup. Ct. 2003).  Rather, the claimant must allege an unfair or deceptive practice and, in fact, must also establish that "the defendant's challenged practice *significantly impacts the public* as actual or potential consumers of the defendant's goods, services or property."  Id. at 149 (emphasis added).  A claim based on a wrong that is private in nature and does not affect the public is not actionable under the CCPA.  Id.; accord Jacobs v. OCWEN Loan Servicing, LLC, Civ. Act. No. 13–cv–02518–REB–BNB, 2015 WL 1433233, at *3-4 (D. Colo. Mar. 26, 2015) (dismissing CCPA claim and awarding attorneys' fees to defendant where such allegations in complaint were "not sufficient to plausibly allege an impact on the public, an essential element of a CCPA claim").

Here, other than generic allegations concerning the alleged dissatisfaction of a few of Defendants' customers, the CC/TPC contains *no* facts to show any significant impact on the public as required to sustain a claim under the CCPA.  The central allegations relate to the alleged adverse impact on *Defendants'* business through their allegedly overpaying for storage and shipments.  In fact, the TMSA had only two parties – neither of which was a consumer at large.  See Tara Woods Ltd. P'ship v. Fannie Mae, 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010)

(dismissing CCPA claim where "Plaintiff alleges only that the Defendants have engaged in deceptive practices towards the Plaintiff, not that the Defendants' deception has been perpetrated on the public at large"); accord Adams v. FedEx Ground Package Sys., Inc., 546 Fed. Appx. 772, 776 (10th Cir. 2013) (holding plaintiff failed to state plausible claim under the CCPA, which requires "'that the defendant's challenged practice [must] significantly impact[ ] the public as actual or potential consumers of the defendant's goods, services, or property'"). This is purely a private wrong and alleged breach of contract that does not, by any stretch of the imagination, amount to a public wrong. To hold otherwise would transform virtually any private dispute into a public one merely by virtue of the conclusory allegation that the alleged acts affected the "victim's" ability to provide services to third parties. See Donna, 2015 WL 9456325, at *4 ("Ms. Donna's allegations of the 'general public' and 'numerous homeowners' are conclusory and insufficient to support a CCPA claim.").

Toward that end, the Amended CC/TPC lacks any allegations that courts have required to satisfy the significant public harm requirement – namely, the "number of consumers directly affected by the challenged practice," the "relative sophistication and bargaining power of the consumers affected by the challenged practice" or "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." Id. at *4 (dismissing such claims where the complaint failed to address these factors). To the contrary, Defendants cite just three specific examples, two of which involved customers receiving *extra* yoga-related items and one of which was simply an allegedly botched order resulting in numerous shipments of yoga mats that the CC/TPC suggests could have been sent via less shipments. (CC/TPC ¶ 16). This could not possibly be the public harm requirement that

the Colorado State Legislature intended in enacting the CCPA.[7]  Count Two therefore fails and should be dismissed with prejudice because Defendants have no other allegations they could add in a subsequent pleading that they could not have added in the Amended CC/TPC.

## CONCLUSION

For the reasons set forth above, Defendants' Amended Counterclaim and Third-Party Complaint should be dismissed in its entirety with prejudice.

**CHIESA SHAHINIAN & GIANTOMASI PC**
One Boland Drive
West Orange, NJ  07052
973.325.1500
*Attorneys for Plaintiff Priority Fulfillment Services, Inc., and Third-Party Defendant PFSweb, Inc.*

By: s/A. Ross Pearlson
    A. ROSS PEARLSON

Dated: July 23, 2018

---

[7] At most, Defendants allege minor inconveniences to a very limited amount of instances.  In fact they do not even allege that the *customers/consumers* (as opposed to Defendants) were overcharged.