USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/14/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PRIORITY FULFILLMENT SERVICES, INC.,

                Plaintiff,

-v-

GAIAM AMERICAS INC., FIT FOR LIFE, LLC, and
FFL.COM LLC,

                Defendants.

GAIAM AMERICAS INC., FIT FOR LIFE, LLC, and
FFL.COM LLC.,

                Third-Party Plaintiff,

-v-

PFSWEB, Inc.,

                Third-Party Defendant.

------------------------------------------------------------X

17 Civ. 5504 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    This decision resolves a motion to dismiss amended counterclaims and third-party claims. Plaintiff Priority Fulfillment Services, Inc. ("PFS"), a provider of logistics and fulfilment services, has sued (1) its former customer, Gaiam Americas Inc. ("Gaiam"), a manufacturer, wholesaler, and retailer of stress-relief- and yoga-related products, (2) Gaiam's successor and assignee, Fit for Life LLC ("Fit for Life"), and (3) FFL.com LLC ("FFL.com"), an affiliate of Fit for Life. PFS sues Gaiam, Fit for Life, and FFL.com for the non-payment of amounts they allegedly owe PFS for services PFS provided under a written agreement.

1

Defendants previously brought counterclaims against PFS and its parent company, PFSweb (together with PFS, the "PFS Parties"), now a third-party defendant in this action. Defendants alleged that the PFS Parties had misrepresented their capabilities during the negotiations that led to the parties' agreement. The Court earlier dismissed all counterclaims, while granting leave to amend some. Defendants so amended and now bring amended claims for misrepresentation, based on Colorado statutory and common law.

PFS again moves to dismiss defendants' amended counterclaims and third-party claims. For the following reasons, the Court grants in part and denies in part that motion.

I. **Background**

A. **Facts**[1]

At all relevant times, Gaiam was a manufacturer, wholesaler and direct-to-consumer e-commerce retailer of yoga-, stress-relief-, and fitness-related products. ACC ¶ 7. Gaiam sold its products under its own brand name and under the SPRI brand. *Id.*

In 2014, Gaiam began a search for a third-party logistics provider to handle its direct-to-consumer e-commerce operations. *Id.* ¶ 9. In 2014, Gaiam's principal executive office was in Colorado. Gaiam conducted this search from Colorado. *Id.* ¶ 10. PFSweb was one of three such providers with which Gaiam had initial negotiations. *Id.* ¶ 12.

During those negotiations, PFSweb made representations about its ability to perform the tasks required. *Id.* ¶¶ 15–21. Gaiam believes that agents were acting variously on behalf of PFSweb and PFS separately and together but that, generally, all representatives with which it

---

[1] The Court's recitation of the facts is drawn from the Amended Answer with Counterclaims and Third-Party Claims (the "ACC"). For the purpose of resolving the motion to dismiss, the Court assumes all well-pleaded facts in the ACC to be true and draws all reasonable inferences in favor of plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

interacted had PFSweb email addresses and used documents with PFSweb logos. *See id.* ¶¶ 14, 16.

On February 18, 2015, Gaiam and PFS entered into a Transaction Management Services Agreement (the "TMSA"). *Id.* ¶ 39. In it, PFS agreed to "provide the Services in accordance with the service level set forth in an SOW [Statement of Work]." *Id.* ¶ 41.

On or about July 28, 2015, PFS began providing third-party logistics services to Gaiam for SPRI-brand products and, on or about October 15, 2015, for Gaiam-brand products. *Id.* ¶ 49. "Some of PFS's failures were apparent almost immediately." *Id.* ¶ 50. However, the "full scope" of the problem that PFS's process was "fundamentally mismatched with [Gaiam's] business model" became clear only through PFS's attempt and failure to better conform PFS's business practices to accommodate Gaiam. *Id.* These "systematic failures," *id.* ¶ 51, included failures to properly measure and catalogue products PFS received from Gaiam, *id.* ¶¶ 54–61, to timely store and replenish products, *id.* ¶¶ 62–67, and to properly package goods for shipping, *id.* ¶¶ 68–72.

Throughout late 2015 and 2016, representatives of Gaiam raised these issues with representatives of the PFS Parties. *See id.* ¶ 74. The PFS Parties assured Gaiam that they would rectify the receiving, storage, and shipping issues Gaiam had identified. *Id.* ¶ 75; *see also id.* ¶¶ 76–78. But PFS did not do so. *Id.* ¶ 75. Although PFS purportedly tried to fix the issues, it charged Gaiam more than what it had projected for freight and fulfillment. *See id.* ¶¶ 83–86.

On May 10, 2016, the TMSA and Statement of Work ("SOW") were assigned to Fit for Life with PFS's consent. *Id.* ¶¶ 4–5. Fit for Life in turn assigned the TMSA and SOW to its affiliate FFL.com. *Id.* ¶ 6. FFL.com raised issues of PFS's performance at each quarterly review with PFS, *see id.* ¶ 88, and on this basis, paid some of PFS's invoices only in part, *id.* ¶ 89.

3

On January 10, 2017, FFL.com notified PFS by letter of PFS's material breaches and of its intent to terminate the TMSA. *Id.* ¶ 90. After PFS failed to cure the breaches FFL.com had identified within thirty days of the notice, the TMSA was terminated on February 9, 2017. *Id.* ¶ 91.

On March 2, 2017, PFS wrote Fit for Life seeking $532,940 in fees for unpaid invoices. *Id.* ¶ 92. FFL.com, through counsel, responded by letter claiming that PFS's figure ignored disputed amounts charged as a result of PFS's various breaches. *Id.* ¶ 93. In a March 20, 2017 letter, PFS, through counsel, again demanded the $532,940 as well as an additional $302,400 for certain minimum fees. *Id.* ¶ 94. Defendants claim that PFS retains approximately $100,000 worth of defendants' goods at its warehouse. *Id.* ¶ 96.

**B.  Procedural History**

On July 19, 2017, PFS initiated this action by filing a complaint against Gaiam, Fit for Life, and FFL.com, seeking unpaid fees. Dkt. 1. On September 20, 2017, defendants filed an answer which included the first counterclaims and third-party claims. Dkt. 17 (the "CC"). On October 13, 2017, the PFS Parties moved to dismiss. Dkt. 22. In support of their motion, they filed a brief, Dkt. 23, and the declaration of Ralph Blakely, Dkt. 24. On December 1, 2017, defendants filed their brief in opposition, Dkt. 40, and the declaration of Joseph Maleh in support, Dkt. 41. On December 19, 2017, the PFS Parties filed a reply. Dkt. 42.

On June 11, 2018, this Court granted the motion to dismiss with leave to amend Counts 1 and 2, which alleged, respectively, the tort of negligent misrepresentation under Colorado common law, and a violation of the Colorado Consumer Protection Act ("CCPA"). Dkt. 43,

4

*Priority Fulfillment Servs., Inc. v. Gaiam Americas Inc.*, No. 17 Civ. 5504 (PAE), 2018 WL 2943776, at *1 (S.D.N.Y. June 11, 2018).[2]

On July 9, 2018, defendants filed an amended answer, which also alleged two claims, each styled as both an amended counterclaim (to the extent against PFS) and a third-party claim (to the extent against PFSweb). Dkt. 49. These were for (1) negligent misrepresentation, and (2) violations of the CCPA. On July 23, 2018, the PFS Parties moved to dismiss the amended counterclaims and third-party claims, Dkt. 50, and filed a brief, Dkt. 51 ("Pl. Br."). On August 1, 2018, this Court granted defendants an extension to file their opposition. Dkt. 53. On September 7, 2018, defendants filed their brief in opposition. Dkt. 54 ("Def. Br."). On September 18, 2018, the PFS Parties replied. Dkt. 55 ("Pl. Reply Br.").

## II. Legal Standard on a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint (including one bringing counterclaims) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlements to relief." *Twombly*, 550 U.S. at 558. Although the court must accept as true all well-pleaded factual allegations in the complaint

---

[2] The Court separately dismissed Counts 3 and 4, in which defendants alleged that PFS breached several obligations under the TMSA and violated the implied covenant of good faith and fair dealing. This dismissal was with prejudice, as the Court found these claims barred by the TMSA's limitation of liability provision. *See Priority Fulfillment Servs, Inc.*, 2018 WL 2943776, at *6–7.

and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

### III. Analysis

Defendants' amended claims again rest on the theory that the PFS Parties misrepresented PFS's ability to implement a direct-to-consumer e-commerce system. Count One again alleges the tort of negligent misrepresentation under Colorado common law. Count Two again alleges a violation of the CCPA.[3]

The PFS Parties make various arguments for dismissal of these amended claims. Reprising the arguments that prevailed as to the earlier versions of these counts, they argue that (1) Counts One and Two do not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b); and (2) Count Two fails to allege a public harm, as required by Colorado law. They newly argue that (1) the counterclaims must fail to the extent brought by Fit for Life and FFL.com because the PFS parties did not make any pre-contractual representations to those defendants; and (2) defendants do not allege a causal link between the negligent misrepresentations and PFS's failures to perform under the TMSA. The Court addresses these arguments in turn.

#### A. Rule 9(b)

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Court previously held that Rule 9(b) applies to the negligent misrepresentation and CCPA claims, but that defendants had pled the counterclaims with insufficient specificity to satisfy the Rule. *See*

---

[3] Colorado law governs both claims. The TMSA specified that the agreement was governed by the laws of the state of Gaiam's principal place of business, which was Colorado. *See Priority Fulfillment Servs, Inc.*, 2018 WL 2943776, at *3 n.3 (citing the TMSA). PFS does not contend otherwise. *See* Pl. Br. at 5.

*Priority Fulfillment Servs, Inc.*, 2018 WL 2943776, at *5. The Court now holds that the counterclaims as reformulated remain subject to Rule 9(b), but that they are now pled with sufficient specificity to satisfy the Rule as to PFSweb, although not as against PFS.

These claims are still subject to Rule 9(b). The Court previously held that the negligent misrepresentation and CCPA claims sounded in fraud because defendants alleged that PFS "'had no present intention' to adapt its business in the ways necessary to live up to its contractual representations [and that] PFS's misconduct was 'intentional' behavior." *Id.* (citing the CC). From this, the Court concluded that PFS's "representations as to its capabilities, as alleged, were fraudulent, not merely accidentally errant." *Id.* The amendment does not disturb that analysis. On Count One, defendants allege that the PFS Parties' conduct was "reckless, intentional and [in] bad faith." ACC ¶ 111. On Count Two, defendants allege the PFS Parties' "deceptive trade practices were willful, knowing and/or intentional constituting bad faith conduct." *Id.* ¶ 121. Each count therefore still sounds in fraud, and is subject to Rule 9(b)'s heightened pleading requirements. *See Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 705 (S.D.N.Y. 2012).

Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). On the initial motion to dismiss, the Court found that the CC failed these requirements because it "fail[ed] to identify who made the alleged misrepresentations and where or when those misrepresentations took place. And most glaringly, the [CC] fails to distinguish between misrepresentations made by PFS and PFSWeb." *Priority Fulfillment Servs, Inc.*, 2018 WL 2943776, at *5. The PFS Parties argue that defendants have still failed to adequately

7

distinguish between PFSweb and PFS for purposes of Rule 9(b), *see* Pl. Br. at 9–10, that any alleged misrepresentations were mere puffery, *id.* at 12–15, and that defendants' allegations are improperly pled upon information and belief, *id.* at 16–19. Defendants disagree. They also urge a relaxed pleading standard because, until discovery, they are not privy to the defendants' inner workings, which are known exclusively by the PFS Parties. Def. Br. at 12–13.

Defendants' ACC pleads the facts relating to the theory of misrepresentation underlying both counts with greater particularity than did its precursor. Defendants have alleged that the PFS Parties (1) knew of the unique requirements of Gaiam's business model, and (2) represented that PFS could manage those requirements, yet (3) knew at the time that PFS was in fact unable to do so, as evidenced by PFS's early and persistent problems fulfilling Gaiam's needs. Defendants have adequately pled the PFS Parties' knowledge of Gaiam's requirements by alleging that Gaiam early on gave PFSweb representatives a tour of Gaiam's warehouse and completed numerous PFSweb requirements questionnaires. ACC ¶¶ 24–30. Defendants have adequately pled that PFSweb made the representations at issues regarding PFS's ability to adequately meet Gaiam's needs by alleging statements made by its Senior Analyst and Director of Sales. These statements were made in the initial proposal sent to Gaiam by PFSweb detailing PFS's specific expertise in order management and packaging, *id.* ¶¶ 17–21, in a pricing proposal sent by PFSweb's Director of Sales, *id.* ¶ 34, and in PFSweb's repeated representations via Power Point at quarterly business reviews that it had the ability to fix the problems that early became evident with PFS's fulfillment services, *see id.* ¶¶ 76–78. Finally, defendants plead PFS's early, consistent, and systematic failures as evidence that, contrary to PFSweb's repeated representations, PFS never had the capability to fulfill Gaiam's particular requirements. *Id.* ¶¶ 50–70. These pleadings clear the bar set by Rule 9(b).

However, the ACC attributes these alleged misrepresentations solely to PFSweb. Specifically, the ACC alleges that "[g]enerally, all representatives that Defendants had interactions with have an email address with a PFSweb domain name and authored documents bearing 'PFSweb' logos," *id.* ¶ 14, that the proposals for providing third-party logistics were authored by PFSweb, *id.* ¶ 18, and that those specific persons making representations held themselves out as PFSweb employees, *id.* ¶¶ 17, 22, 26, 34. There are no such allegations as to PFS. And while PFSweb apparently conducted the marketing on behalf of PFS, which actually performs order fulfillment services, the ACC does not allege that PFS made any representations during the contracting process between it and Gaiam. While PFS was the entity that ultimately contracted with defendants, the only actual representations made to defendants, as alleged, were by PFSweb. *See id.* ¶¶ 98–104 (all alleging PFSweb misrepresentations).

To be sure, the ACC does include conclusory allegations to this effect. It states, for example, that "PFS breached its duty to Gaiam by misstating its present ability to perform Gaiam's e-commerce business," *id.* ¶ 107, and that "PFS's representations were a material inducement that caused Defendants to refrain from terminating the TMSA at an earlier date," *id.* ¶ 109. But these general averments lack particularity as to time, place, and speaker; the only statements that are concretely alleged are attributed to PFSweb. The ACC alleges that defendants communicated their complaints about PFS's fulfilment only through PFSweb employees, *id.* ¶ 74, and that PFSweb employees were the ones who not only pitched the PFS product but who assured defendants that PFS would fix such problems, *see id.* ¶ 76 (describing a Power Point presentation "institutionally authored by PFSweb"); ¶ 77 (describing another presentation "bearing a PFSweb logo"); ¶ 78 (describing another presentation "institutionally authored by PFSweb").

9

Defendants have therefore cured their negligent misrepresentation pleadings as to PFSweb by detailing the misrepresentations and their authors with particularity, but they have not done so as to PFS. The Court therefore grants the motion to dismiss defendants' two counterclaims against PFS, but denies the motion to dismiss defendants' third-party complaint against PFSweb.

### B. Public Harm

To plead a CCPA claim, Colorado law requires a plaintiff to allege that a defendant's wrongdoing "significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003). In granting the earlier motion to dismiss, the Court held that defendants' allegations that the PFS Parties' practices harmed the public were too threadbare. Defendants' ACC has not sufficiently fortified its allegations of public harm. Count Two must therefore be dismissed.

Under Colorado law, to determine whether a practice "significantly impacts the public," a court is to consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* at 149. Where the challenged practice affects only a small fraction of an entity's consumers, that impact is not "significant" for purposes of the CCPA, and constitutes a solely private harm. *Id.* at 150 (finding a practice affecting three out of 500 consumers insufficiently significant); *see also Peterson v. USAA Life Ins. Co.*, 17 Civ. 1514 (CMA) (KMT), 2018 WL 5312880, at *9 (D. Colo. Oct. 26, 2018) (finding denial of 109 of 17,500 life insurance claims to have a "de minimis impact on the public and [be] therefore outside the scope of the CCPA as a matter of law"); *Coors v. Sec. Life of*

*Denver Ins. Co.*, 91 P.3d 393, 399 (Colo. App. 2003) (holding that "an impact on at most one percent [200 of 20,000] of the policyholders could not constitute public impact"), *rev'd on other grounds*, 112 P.3d 49 (Colo. 2005). The PFS Parties argue that the defendants have alleged only private, not public harm. *See* Pl. Br. at 21–23. Defendants counter that the harm they have alleged to their customers is sufficiently significant. *See* Def. Br. at 23–24.

The Court, on this point, agrees with the PFS Parties. The ACC does not bring claims on behalf of consumers. And it does not plead sufficient facts to allege that the practices underlying the dispute between these commercial parties "significantly impact[] the public."[4] *See, e.g., James v. Penguin Grp. (USA) Inc.*, No. 13 Civ. 2801 (DLC), 2014 WL 1407697, at *1 (S.D.N.Y. Apr. 11, 2014) (upholding CCPA claim in class action with at least 150 specifically complaining consumers). The ACC instead alleges a business dispute with limited collateral impact on customers. The ACC pleads only that (1) three customers received more products than they ordered, (2) a (possibly singular) customer was repeatedly sent the wrong product, (3) a (possibly singular) customer was sent a shipment late, (4) email notifications were inadequate; and (5) orders were cancelled too hastily. ACC ¶¶ 116–18. The ACC is devoid of factual allegations as to how many consumers, or what fraction of defendants' customer base, may have been impacted by these practices. Its allegations are consistent with the inconveniencing of a mere handful of consumers.

The ACC therefore fails to adequately plead a claim under the CCPA. Count Two is accordingly dismissed with prejudice.

---

[4] The Court notes that defendants' misrepresentation claims concern misrepresentations made by PFSweb in its capacity as a party facilitating PFS's contracting, whereas the theory of consumer harm defendants invoke in defense of Count Two implicates PFS's activities in connection with its fulfillment services. Independent of the points covered in the text above, this separately calls into doubt whether the ACC has adequately pled a CCPA claim.

11

### C. Dismissals as to Fit for Life and FFL.com

The PFS Parties argue, for the first time, that defendants have failed to plead that the PFS Parties made any pre-contractual misrepresentation to Fit for Life or FFL.com as opposed to Gaiam, and that defendants' counterclaims must therefore be dismissed to the extent brought against Fit for Life and FFL.com. Pl. Br. at 6. As to any post-contractual misrepresentations made, the PFS Parties also claim that Colorado's economic loss doctrine bars recovery based on negligent misrepresentation made after execution of the TMSA. Pl. Br. at 6–7. Defendants counter that post-contractual misrepresentations made by the PFS Parties to Fit for Life or FFL.com are actionable because they arise from an independent tort-law duty of care that does not arise from the TMCA but from the misrepresentations themselves. Def. Br. at 10–12. For the following reasons, the Court dismisses Fit for Life and FFL.com's claims against PFSweb.

As an initial matter, of defendants' counterclaims and third-party claims, the Court has already dismissed all but the third-party claim against PFSweb for negligent misrepresentation. There is no claim of a contractual relationship between the parties as to that one surviving claim. *See supra*; *see also* Def. Br. at 9–10 ("[T]here is no contractual connection between PFSweb and Fit for Life or FFL.com."). Colorado's economic loss doctrine, the basis of the PFS Parties' second argument, does not preclude such a claim. *See BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004) (describing the economic loss rule as "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such breach absent an independent duty of care under tort law" (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000))).

The PFS Parties' first argument, however, has merit: the ACC does not plead any misrepresentations made by PFSweb to Fit for Life or FFL.com. *See* Pl. Br. at 6. It alleges only

that "[a]fter FFL.com took assignment of the TMSA, it continued to routinely inform PFS of the fact that it was in material breach of the TMSA and SOW." ACC ¶ 88. There is no reference to PFSweb specifically. Further, even assuming *arguendo* that the "PFS representatives" whom the ACC pleads were present at the quarterly reviews where FFL.com raised these issues, *id.*, were in fact PFSweb representatives, the ACC nowhere pleads that there were representations made by the PFS Parties *after* FFL.com was assigned the TMSA, for example, as to PFS's intention or ability to adequately meet FFL.com's needs. There is therefore no factual basis for Fit for Life or FFL.com to bring a negligent misrepresentation claim against PFSweb.

The Court therefore dismisses the negligent misrepresentation claims by Fit for Life and FFL.com, although not the negligent misrepresentation claim by Gaiam.

### D. Causal Link

The foregoing analysis leaves intact one claim by defendants: Gaiam's common law third-party claim against PFSweb for negligent misrepresentation. The PFS Parties argue that the ACC has not adequately pled that defendants' reliance on PFSweb's representations caused them to suffer the pecuniary loss they claim from PFS's performance failures. *See* Pl. Br. at 19–20; Pl. Reply Br. at 6–7. Defendants counter that while this argument might be made had they brought a claim for negligent performance of contract, it ill-fits their negligent misrepresentation claim, which is that the PFS Parties "(1) induced Gaiam to enter into the TMSA; and (2) caused Defendants to refrain from terminating the TMSA at an earlier date." Def. Br. at 22. The Court holds, with Gaiam, that the ACC adequately pleads causation.

Under Colorado law, the elements of a negligent misrepresentation claim are that "(1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon

13

by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment." *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (en banc). The PFS Parties' argument concerns the fifth element. *See* Pl. Reply Br. at 7.

The Court is persuaded that the ACC adequately pleads that Gaiam justifiably relied on PFSweb's representations that PFS had the capability to perform Gaiam's third-party logistics needs, and suffered monetarily when PFS proved unable to do so. It is true, as the PFS Parties note, that defendants have a remedy for breach of contract. But the PFS Parties have not cited authority that the existence of such a remedy, under Colorado law, necessarily extinguishes the aggrieved party's right to sue in tort for being wrongly induced to enter the contract in the first place. *See* Pl. Br. 19–20 (citing no cases); Pl. Reply Br. at 6–7 (citing only *Allen*, which based its remand on plaintiffs' failure to plead the third element, and did "not address whether their complaint satisfied the other elements," 252 P.3d at 485–86). It remains to be seen, following discovery, whether Gaiam will be able to prove all elements of its third-party claim against PFSweb, including that of causation.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the PFS Parties' second motion to dismiss. The Court dismisses with prejudice (1) Count Two in its entirety, (2) all claims brought by Fit for Life and FFL.com, and (3) Gaiam's counterclaim against PFS. The Court denies the motion to dismiss Gaiam's remaining claim: its third-party claim under Colorado law against PFSweb for common law negligent misrepresentation. The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 50.

14

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 14, 2018
  New York, New York